## GARDNER v. HAWES.

(Court of Civil Appeals of Texas. San Antonio. June 12, 1912.)

1. BILLS AND NOTES (§ 377*)—FORGED NOTES —STATUTES.

A forged note is void, even in the hands of an innocent purchaser, and is not governed by the statutes applicable to paper "negotiable or assignable by law."

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 952; Dec. Dig. § 377.*]

2. BILLS AND NOTES (§ 301*)—FORGERY—NOTICE—NECESSITY.

A holder of a note on discovering that it was forged must give his transferrer notice thereof within a reasonable time.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

3. BILLS AND NOTES (§ 516*)—FORGERY—NOTICE—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a finding that defendant received notice of forgery of a note, an interest in which he had transferred to plaintiff, within a reasonable time after plaintiff discovered the forgery.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1800–1806; Dec. Dig. § 516.*]

4. BILLS AND NOTES (§ 301*)—FORGERY—ACTION BY TRANSFEREE—RETURN OF NOTE—NECESSITY.

A transferrer of an interest in a forged note was not released from liability to the transferee on discovery of the forgery because the transferee failed to return the note to him, where it had remained in the custody of one of the payees.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

Appeal from Dallas County Court, at Law; W. F. Whitehurst, Judge.

Action by J. W. Hawes against E. W. Gardner. Judgment for plaintiff, and defendant appeals. Affirmed.

S. W. Marshall, of Dallas, for appellant. Wm. M. Jones, of Dallas, for appellee.

JAMES, C. J. Hawes sued E. W. Gardner and Chas. Stovall in the justice's court to recover $200 and interest, alleging, in substance, that prior to May 27, 1909, Chas. Stovall assigned to E. W. Gardner and indorsed, and guaranteed to him the validity of, a half interest in a promissory note for $550 signed with the name of J. M. Gilcrist, and payable to the order of Joseph Weil and Charles Stovall; that about May 27, 1909, Gardner, in consideration of $200 paid him in cash by plaintiff, assigned, indorsed, and guaranteed the payment and validity on said undivided half interest in the note; that both represented to plaintiff that said note was a good and valid obligation for the purpose of inducing plaintiff to purchase said half interest in it; that said note was, in fact, a forgery so far as Gilcrist's name to it was concerned, which fact was unknown to plaintiff at the time he purchased and for a long time afterward; that the fact was known to Stovall, or, if he did not know it, he could have known it in the exercise of proper diligence, and was guilty of negligence in not knowing it and practiced a fraud on plaintiff in making the transfers and representations aforesaid; that said note is utterly worthless and not a valid obligation, and by reason of said false and fraudulent representations plaintiff was induced to and did pay to defendant Gardner said sum of $200, to his damage in that amount, but that, if he be mistaken in his allegation of fraud, then he alleges that said $200 was paid under a mistake of fact, the note being not what it appeared to be and the consideration for the $200 which he paid to Gardner has wholly failed, to his damage in that sum. He prayed for judgment against both defendants and for general relief. Defendants answered by general demurrer and denial further that each of them had obtained their interest in the note as bona fide purchasers for value, and denied any knowledge of the paper being forged; that plaintiff, after knowledge of the forgery, made no demand on either of defendants until long after the party who forged the note had left Dallas for parts unknown; that the party who did forge the note was in the city of Dallas for some time after plaintiff acquired knowledge of the forgery, and had funds and was paying off, and did pay off, many obligations between the time plaintiff knew of the forgery and long before plaintiff made any demand on either of the defendants; and, further, that the suit was not brought within 60 days after the cause of action accrued, nor before the third term thereafter of either the county or district courts. The cause was tried before the county judge, who gave judgment against Gardner for $200 and interest in favor of plaintiff, and judgment in favor of Stovall.

[1, 2] Appellant, under proper assignments of error, presents his case on two propositions, which we copy: (1) "When the holder of a negotiable promissory note purchases same from his transferrer on which note there are prior indorsers, such holder, after discovery that the signature of the maker of the note is forged, cannot recover thereon where he fails to make demand for payment of his transferrer for such length of time as to deprive the latter of the opportunity of seeking collection of the same from the party issuing the forged note." (2) "Upon the discovery of the forgery of the name of the maker of the note, it was the duty of the holder thereof to return, or offer to return, said instrument to his transferrer, in order that such transferrer might have the opportunity to use the same in asserting his rights thereunder. The failure to do so on the part of the holder relieves the transferrer of liability thereon to the holder." It will be observed that the propositions do not

make a question of the necessity of protest, or bringing of suit within a certain time. The cause was evidently tried in county court upon the theory that our statutes in reference to paper "negotiable or assignable by law" have no application to a forged note. That such note is void, even in the hands of an innocent purchaser, is too well settled to require citations. It is clearly not a negotiable instrument, this being the result of the fact that it is no obligation at all. As a nonnegotiable instrument or a chose in action it can gain no greater force as an obligation by transfer. Such paper cannot, we think, be deemed "assignable by law." However, the question, and the only question, involved in the propositions, is the failure of plaintiff to give Gardner, against whom judgment was rendered, notice of the forgery within a reasonable time after his discovery of the fact. That such duty was imposed on plaintiff is well established. Tiedeman on Comm. Paper, § 400. Although the note was forged with the name of the maker, and was worthless in itself as an obligation, still, being apparently regular, it was liable to be purchased and sold by third persons as a valid instrument in good faith. An indorsement or transfer of such an instrument for a consideration carries with it the indorser's or assignor's warranty of its genuineness. The statute (article 304, Sayles' Rev. St.) contemplates a note executed by the maker, and has no application to a note that is a forgery. The transfer of such a paper amounts to nothing more than the assignment of a thing that turns out to have no real existence. Although the note itself was of no validity, it was the occasion for contract liabilities to arise with reference to it between those who dealt with it. Thus Stovall could become liable to Gardner for any consideration that may have been paid him by Gardner; the note, the genuineness of which was either impliedly or expressly warranted by him, having proved to be spurious. Likewise Gardner would be under liability to plaintiff to whom he sold. These obligations arising from the sale of the instrument are original undertakings, and Gardner's relation to plaintiff was one of original and primary liability, arising from the fact that he sold and warranted an obligation which had no existence. The evidence shows clearly that Stovall was notified by plaintiff of the forgery immediately upon his learning of it. We should state that plaintiff recovered no judgment against Stovall, and Gardner took no judgment over against Stovall, and that branch of the case is not appealed from, so the question on this appeal is simply as to Gardner's status. The authorities are clear that it was plaintiff's duty to Gardner to convey notice of the forgery to him within a reasonable time in order to afford him the opportunity to protect himself, unless Gardner had equivalent notice otherwise or be estopped from asserting his claim against him.

[3] The court must have concluded from the testimony that plaintiff met the requirements of the law in this respect. The testimony showed that Weil must have been the one who signed Gilcrist's name to the note payable to himself and Stovall. Stovall sold his half interest to Gardner, who subsequently sold it to plaintiff for $200. It was about May 27, 1909, that Gardner sold to plaintiff. Plaintiff talked to Stovall about the matter, and Stovall told him the note was all right, and Weil was called on, and he showed the note and Gardner indorsed his interest to plaintiff. Weil kept the note, and plaintiff never saw it except on said occasion. In August Weil told plaintiff he had collected some interest on the note, and would hand it to him in a few days. Shortly after this it appears Weil left. In the latter part of September or early in October, rumors having arisen that there was some crookedness about his transactions and that he was not going to return, Hawes went to Gilcrist to advise him not to pay any money on the note as plaintiff had an interest in it, and then learned that Gilcrist had executed no such note. He immediately went and told Stovall, Gardner was out of town on a vacation, and did not return for several days. It appears that Gilcrist, Stovall, and Gardner and plaintiff were all employés in Sanger Bros.' store, and that Weil was also in the firm's employ; that about the time just mentioned it became generally known that Weil had been connected with such fraudulent transactions, and it was generally talked that he had forged notes of this kind and obtained money thereon; that this became a subject of general discussion among the clerks as to who would lose by these transactions, Hawes' (plaintiff's) case being discussed on his floor among the clerks there, Hawes, Gardner, Stovall, and others being there all the time.

The above was testimony as given by plaintiff, and this is confirmed by Stovall, who stated: "There was some rumor of Weil's transactions being crooked, and in a short while it began to be generally commented upon in the store." Gardner himself testified that, when he returned from his vacation, there was considerable talk in the store about Joseph Weil having perpetrated many crooked transactions, and that many fraudulent transactions had shown up, but he stated, also, that he did not know that the signature of Gilcrist to this note was a forgery until after Weil had left the store. Weil it appears had left the store when Gilcrist informed plaintiff he had not signed the note. The court had the right from the facts and circumstances which appear in the evidence to form the conclusion that Gardner became informed of the fact of the forgery of this paper at or about the time of his return to Dallas. This was apparently as soon as

plaintiff could have been expected to inform him. It was not necessary for plaintiff to have informed him of the fact if he ascertained it otherwise. That such notice was obtained in a reasonable time after discovery of the fact by plaintiff, and as soon as plaintiff would, in the exercise of proper diligence, have been required to give it, is another conclusion which the court had a right to make.

[4] The possession of the note itself was not indispensable to Gardner in asserting his right against Stovall or Weil. However, it was sufficiently shown by the testimony that the note itself had remained in Weil's custody all the time. This fact it was clearly admissible for the court to find. This being so, it cannot be held that plaintiff's failure to return the instrument to Gardner released the latter from liability. When the trial court files no reasons for its judgment, all facts or inferences that arise from the testimony which tend to support the judgment must be taken as having been found.

The fact that plaintiff endeavored to collect the note from an agent of Weil would not operate to discharge Gardner.

Judgment affirmed.